We move to the eighth case this morning, Hardy v. Berryhill. Attorney David Sutterfield Morning, Your Honors. I'm Attorney David Sutterfield on behalf of Mr. Hardy. Please support and counsel. When an administrative law judge weighs a physician's opinion, as noted by the argument before the district court, the administrative law judge must give specific reasons supported by the record and explain the weight. That's not possible for the administrative law judge to do that if they don't understand or properly identify what the claimant's impairment is. In this instance, the administrative law judge failed to recognize that Mr. Hardy had failed back syndrome and instead applied criteria that pertain to if he never had the surgery would be one example, or if in fact the surgery had to be redone or some other basis. But what the administrative law judge did was go through the very things that are cited as part of making the diagnosis and then use those as a reason for saying that Mr. Hardy's not impaired. The neurosurgeon knows what the diagnosis is. He went through the differential process and reached that diagnosis and then, after he reached that diagnosis, opined as to Mr. Hardy's limitations. For the administrative law judge to do the opposite would be comparable to what this there's no sensory deficits, there's no muscle wasting, things of that sort which have nothing to do with fibromyalgia. Ironically, in this instance, the commissioner cites an article or not an article but an advertisement from a medical provider that says, you know, we can get to the bottom of your failed back syndrome. Of course, we're going to go through this differential diagnosis to find out if there's something else, but that ends up being what your condition is, then we can treat it. That's the problem and there's just no way that an administrative law judge can crack away an individual's medical opinion if the administrative law judge is using criteria for something completely unrelated. That just doesn't work. Ironically, you know, in this instance, the administrative law judge stated that Dr. Bauer, the surgeon's opinion, was inconsistent with his own treatment notes, but again, his treatment notes led him to that diagnosis of failed back syndrome. You can't have it both ways and that's exactly what she did. But Dr. Bauer also said that Mr. Hardy could perform light work, correct? He did, but he also have, what does that mean? I mean, he doesn't define it, he doesn't define it in Social Security's terms, he doesn't define how long he could do it for, how frequently he can do it. You know, you have all those type of issues that are in place and you also see that at the end of the treatment, you're seeing the doubling of the pain medication, things of that sort. So there's not an alignment of those matters within itself and it would have been appropriate for the administrative law judge then to have analyzed that. She didn't. She didn't say, well, he found that you could do light work, therefore. There's a reason that she didn't do so, it's because the commissioner's own guidelines say, well, we're not going to assume that they use terminology like light work in the way that we do. My impression of the ALJ's opinion with respect to saying that Dr. Bauer's opinion, you know, is inconsistent with his treatment notes, when you look at the treatment notes, there are several observations in Dr. Bauer's notes, which you know, where he's observing that Mr. Hardy's condition, in one way or another, is normal. Correct. But it's a pain case. In other words, you have... Right, so there's not a total disconnection between the light work conclusion and the medical observations of normal functioning in one way or another. Well, there is in the terms of how limited his range of motion is and things of that nature, measured in other records. He's not, if you note, Dr. Bauer's not going through and doing the measurement of the range of motion. Dr. Chapa, the social security doctor, does, and Dr. Chapa, lo and behold, what diagnosis did he come up with? Failed back syndrome. So you have the two principal medical sources, the one that the commissioner sought, we need this opinion, let's go get it, and that opinion comes back and it's identical to that of the treating physician. And the treating physician says, you know, this person is not capable of performing sedentary work. Which, again, as noted in our brief, there's a consistency that the administrative law judge has to look for in the record. You have, in this instance, a state agency doctor saying that Mr. Hardy is, in fact, limited to sedentary work. Now, that was his previous application, and you have a degenerative condition. The condition is not going to improve, so it's rather difficult to imagine how it got better when from limited to sedentary but now improved to light. But again, that's something the administrative law judge is supposed to resolve. The administrative law judge cannot resolve those if they don't know what the impairment is. She's using the differential diagnosis as a foil and saying, well, all these objective findings are normal. And she didn't talk about functionality, Your Honor, in further follow-up to your question. She talked about physical findings, namely medical findings in the exam. Those are different things. That's how he reached a diagnosis. I think it's, well, again, I think when you look at the fact that they've cited an advertisement that goes through that very process and recognizes how frustrating and discomforting and disabling failed back syndrome can be, that they cite an advertisement from somebody who says, oh, you reach that by differential diagnosis. The ALJ didn't address that. She has to get on the same page with the impairment in order to weigh it. That's clearly what was argued before, and it's clearly what the regulations in the SSR 96-2P require. I'll reserve my time. Thank you. Thank you, counsel. Mr. Schieffer. Good morning, and may it please the Court. My name is Ryan Schieffer, and I represent Nancy Berryhill, the Acting Commissioner of Social Security. Mr. Hardy raises only one issue in this case, and that's about the weighing of Dr. Bower's opinion. No. No S. Dr. Bower. No, it is Dr. Bower. Yes. And the ALJ explained why she gave very little weight to Dr. Bower's opinion. She pointed to the many normal examination findings in Dr. Bower's own examination notes. Again, Dr. Bower, not Bower's. Oh, sorry. I was using it in the... You're using it with a plural, or where the comma for the Bower is? Oh, well, Dr. Bower had several opinions in this case, Your Honor. Yes. I will try to be careful on that point. Thank you. I'm sensitive to it, but go ahead. Yes. So the ALJ explained why Nancy Berryhill's opinion. Many examinations showed normal findings, and those normal findings were normal balance, normal gait, normal coordination, normal strength, no atrophy, and normal sensation. You can see those in Dr. Bower's examination notes, which show... The notes of Dr. Bower are probably the easier way to say it. Yes, yes. The notes of Dr. Bower, which show, again, persistently normal findings. Now, Mr. Hardy has alleged that there's something special about post-laminectomy syndrome or failed back syndrome, and that's just not the case here, because unlike, say, fibromyalgia, Mr. Hardy hasn't provided any medical literature that shows that post-laminectomy syndrome entails normal findings in records. There's no Social Security ruling that discusses post-laminectomy syndrome, unlike fibromyalgia. And Mr. Hardy doesn't cite any case law to support the proposition that there's something special about post-laminectomy syndrome. So instead, what we have here is the ALJ discussed relevant clinical signs which were normal, and the ALJ did so in a way that was consistent with 20 CFR 404.1527, which is the agency's regulation for weighing opinion evidence. The ALJ concluded that Dr. Bower's opinions were not supported in the medical record and were not consistent with clinical evidence. Dr. Hanlon. Suppose we agree with you on that point alone. I may have misspoke earlier. Dr. Bower's notes, at least the ones from June of 2014, suggest that Mr. Hardy should be limited to sedentary work, correct? Dr. Bower. Yes, they do. Dr. Hanlon. So might there have been too much discounting of Dr. Bower's view with respect to the RFC determination? Dr. Bower. Well, the ALJ again pointed to... Dr. Hanlon. The ALJ concluded light work, right? Dr. Bower. Yes, the ALJ concluded light work. Dr. Hanlon. Light work is more than sedentary work. Dr. Bower. Yes, that's correct. And when you look at the opinion evidence, the ALJ explained why he rejected the more restrictive opinions, which would include the two opinions of Dr. Bower. And also, the ALJ explained why there were some other opinions that were really not at issue. But the ALJ explained why he rejected the more restrictive opinions. And ultimately, the ALJ's light work RFC was consistent with the more recent state agency opinion of Dr. Madison, which was also light work with really the exact same posture limitations. Dr. Hanlon. But Madison's not part of the ALJ's analysis, right? Dr. Bower. That's right. The ALJ didn't mention it, but the ALJ nonetheless considered that and reached that RFC finding. Dr. Hanlon. But, I mean, what evidence would there be of that other than just reading the four corners of the ALJ's opinion? Dr. Bower. Well, right. Dr. Hanlon. With no reference to Madison or Gonzalez. Dr. Bower. Right. I would say it's implied because the ALJ's RFC matched Dr. Madison's opinion, and in my view, that's not a coincidence. Sorry. And if there are no further questions, we respectfully ask that the Court affirm the Commissioner's decision. Thank you. Thank you, Counsel. Mr. Sutterfield. Thank you, Counsel and the Court. I'm not saying this is something special. What we're saying is the administrative law judge didn't identify it. If the ALJ doesn't identify the appropriate diagnosis, then how can the ALJ then determine what, in fact, are the appropriate criteria by which to assess functionality? They can't. They're completely in the dark. That's the problem. They cannot do that if they don't do it. So we're not saying it's something special. It's something the administrative law judge should have done in the course for analysis. What's the diagnosis that Dr. Bower reached? What is the diagnosis that Dr. Chaffer reached? And go from there. It's interesting that the Commissioner notes the ALJ didn't have all these normal findings. Range of motion for Mr. Hardy is profoundly reduced. It's reduced by a third for a forward flexion. It's reduced by 80% for backward extension, reduced by 60% for lateral on both sides. Because of pain. You're going to put somebody out there and you're going to have them doing light work, bending, lifting, walking, with those kind of limitations? You can't ignore the findings that are made by the state HC doctor. That's their specialist. They're not going to be making, as this court's case law says, they're not going to be making findings that undo where the Commissioner might end up being in terms of pain benefits that somebody otherwise wouldn't be entitled to. They're going to give it a straight shot, and if it's going to be biased one way, it's certainly not going to be biased against the Commissioner. So again, it's our position that we're not saying it's something special. We're saying it's something the judge has to weigh. She didn't. She never got on the right page and went down the wrong track. She might have reached the same result, but she's got to get on the right track to begin with, and that's the problem. Thank you. Thank you, Counselor. Thanks to both Counselors. And we'll take the case under advisement.